UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHIEF OF STAFF LLC, on behalf of itself and all others similarly situated, | ) ) ) | Civil Action No. 1:20-cv-03169 |
| | ) | JUDGE GARY S. FEINERMAN |
| Plaintiff, | ) ) | MAGISTRATE JUDGE MARIA |
| v. | ) ) | VALDEZ |
| HISCOX INSURANCE COMPANY, INC., | ) ) | ORAL ARGUMENT REQUESTED |
| Defendant. | ) ) ) | |

**PLAINTIFF CHIEF OF STAFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff Chief of Staff LLC operates a Connecticut hospitality support agency and is one of the tens of thousands of business operators in the United States wrongly denied insurance coverage for the forced interruption of their business. Plaintiff was issued an "all-risk" insurance policy by Defendant Hiscox Insurance Company, but has been denied coverage for business income losses resulting from Connecticut's government shut-down orders that rendered its insured property unusable.

Chief of Staff has properly alleged a claim for insurance coverage. Hiscox promised to pay for the actual loss of Business Income Chief of Staff sustained due to a suspension of operations caused by *either* physical loss of *or* damage to property. There is no dispute that Chief of Staff has suffered a suspension of its operations, yet Hiscox moves to dismiss that complaint on the ground that "physical loss of or damage to property" requires an physical alteration to the insured property. Not so. If property is rendered unusable, the insured has suffered a covered loss. *See, e.g.*, *TRAVCO Ins Co. v. Ward*, 715 F. Supp. 2d 699, 708 (E.D. Va.

2010), *aff'd*, 504 F. App'x 251 (4th Cir. 2013). Because Chief of Staff experienced a loss of functionality of its covered property, it is entitled to coverage and Hiscox's motion to dismiss should be denied.

**STATEMENT OF FACTS**

**A.    Chief of Staff's All-Risk Businessowners Insurance Policy with Hiscox**

Hiscox issued Chief of Staff Businessowners Policy No. UDC-1575520-BOP-19 to for the period April 30, 2019 to April 30, 2020, which was renewed as Businessowners Policy No. UDC-1575520-BOP-20 for the period April 30, 2020 to April 30, 2021 ("Policy" or "Policies"). Amend. Compl. ¶ 17. Both Policies are the same in all material respects. Amend. Compl. ¶ 17.[1]

Chief of Staff's Policy included coverage for lost business income sustained due to a suspension of operations of its business located at 750 Main Street Suite 1304, Hartford, Connecticut. Declaration of Stephen A. Weiss ("Decl.") Exh. A at 3, 11. Chief of Staff consistently paid all of its premiums due under the Policy to Hiscox which, in turn, promised to pay for business loses and extra expenses incurred as a result of an insured loss that prevented Chief of Staff from running its business, subject to a coverage limit of the "[a]ctual loss amount for up to 12 months." Decl. Exh. C (Coverage Guide) at 2.

Specifically, the Policy provides:

**Business Income**
We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to *loss of* or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

---

[1] Because the policies are materially the same, all references to Chief of Staff's Policy refer to Decl. Exh. A.

Decl. Exh. A at 11 § I(A)(5)(f)(1)(a) (emphasis added). Business Income is defined as net income "that would have been earned or incurred if no physical loss or damage had occurred" and continuing normal operating expenses incurred, including payroll. *Id.* at 12 § I(A)(5)(f)(1)(c). A "suspension" is defined to mean either a partial slowdown or complete cessation of Chief of Staff's business activities, or that "a part or all of the described premises is rendered untenantable." *Id.* at 11 § I(A)(5)(f)(3). "Operations" means the "business activities occurring at the described premises." *Id.* at 36 § I(H)(8). And "period of restoration" means the time running from 72 hours after the loss or damage until business is resumed. *See id.* at 36 § I(H)(9).

Chief of Staff's Policy also covered "Extra Expense," expenses incurred during the "period of restoration" that would not have incurred if there had been no direct physical loss or damage to property at the described premises, including expenses:

> (a) To avoid or minimize the suspension of business and to continue "operations"
> (i) At the described premises; or
> (ii) At replacement premises or at temporary locations, including: relocation expenses, and costs to equip and operate the replacement or temporary locations.
>
> (b) To minimize the suspension of business if you cannot continue "operations".
>
> (c) To:
> (i) Repair or replace any property, or
> (ii) Research, replace or restore the lost information on damaged "valuable papers and records";
> to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage or Additional
> Coverage f. Business Income.

*Id.* at 13 § I(A)(5)(g)(1). As with the Business Income coverage, the Policy defines "suspension" to mean either a "partial slowdown or complete cessation of" business

activities; or "[t]hat a part or all of the described premises is rendered untenantable, if coverage for Business Income applies." *Id.* at 13 § I(A)(5)(g)(3).

Chief of Staff's Policy further provided Civil Authority coverage:

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

*Id.* at 13-14 § I(A)(5)(i).

For each of these coverages, Business Income, Extra Expense, and Civil Authority, covered causes of loss include all "risks of direct physical loss" unless the loss is excluded or limited under the policy. *Id.* at 8 § I(A)(3). The Policy contains no exclusion or limitation that would bar recovery for the complete loss of functional use due to government closure orders.

**B.     Connecticut's Forced Closure of Chief of Staff**

In an attempt to prevent the spread of the COVID-19 pandemic, Connecticut Governor Ned Lamont issued Executive Order No. 7D on March 16, 2020, barring social and recreational gatherings of all types to fewer than 50 people and closing bars and restaurants to all service except food and non-alcoholic beverage takeout and delivery. Amend. Compl. ¶ 32 & n.27. Less than one week later, Governor Lamont required all non-essential business to reduce their in-person workforces by 100%.

As a result, Chief of Staff has been unable to use its property for its intended purpose. Amend. Compl. ¶ 43. Accordingly, it submitted a claim under its business interruption insurance Policy to Hiscox, but that claim was denied because Hiscox asserted that the income loss was not as a result of direct physical loss of or damage to property at the premises, and that the Policy contains an exclusion for any damages caused directly or indirectly by a virus.

This action follows. Chief of Staff seeks a declaratory judgment and damages on behalf of itself and other Hiscox insureds whose business interruption losses resulting from the Connecticut Executive Orders and similar orders elsewhere were denied. For the reasons set forth below, Chief of Staff suffered a "direct physical loss" of its property as a result of the restriction of their businesses by the Executive Orders. Hiscox's motion to dismiss should be denied.

## LEGAL STANDARD

To survive such a motion, the complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide a defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In ruling on a Rule 12(b)(6) motion, all well-pleaded facts in are accepted as true and draw all reasonable inferences in the plaintiff's favor. *See, e.g.*, *Perez v. Amco Ins. Co.*, No. 08-CV-04364, 2010 WL 1582229, at *2 (N.D. Ill. Apr. 20, 2010) (citing *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005)).

## ARGUMENT

Under Connecticut law, an insurance policy is "interpreted by the same general rules that govern the construction of any written contract . . . the determinative question is the intent of the parties, that is, what coverage the [insured] expected to receive and what the [insurer] was to

provide, as disclosed by the provisions of the policy." *Johnson v. Conn. Ins. Guar. Ass'n*, 31 A.3d 1004, 1007 (Conn. 2011) (quoting *Conn. Med. Ins. Co. v. Kulikowski*, 942 A.2d 334, 338 (Conn. 2008)). The policy must be interpreted as a whole, with all relevant portions considered together and, if possible, operative effect given to every provision in to reach a reasonable result. *Id.* "A policy should not be interpreted so as to render any part of it superfluous." *Hansen v. Ohio Cas. Ins. Co.*, 239 Conn. 537, 547–48, 687 A.2d 1262, 1267 (1996). "[A] provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading." *Johnson*, 31 A.3d at 1007. "Any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy." *Id.*

Hiscox promised to pay for the actual loss of business income Chief of Staff sustained so long as the suspension of business operations was "caused by direct physical loss of or damage to property at the described premises." Decl. Ex A at 11 § I(A)(5)(f)(1)(a). By its plain language, the Policy's provision of coverage applies not only when property at the premises suffers physical damage, but also when that property is lost. Because Chief of Staff indisputably "lost" the use its property for its intended purpose due to Connecticut's closure orders, its lost business income is covered under its policy's Business Income, Extra Expense, and Civil Authority provisions, and Hiscox's motion to dismiss should be denied. *See Studio 417 Inc. v. The Cincinnati Ins. Co.*, No. 20-cv-03127-SRB, 2020 WL 4692385, at *5 (W.D. Mo. Aug. 12, 2020) (denying motion to dismiss claim alleging business interruption insurance covered losses from civil authority closure orders).

## I. Chief of Staff properly alleges a covered cause of loss for Business Income and Extra Expense coverage.

Hiscox's promise to pay Business Income and Extra Expense coverage kicks in when Chief of Staff suffers a suspension of business operations caused by direct physical

loss of, or damage to, property at the described premises. Decl. Exh. A at 11 § I(A)(5)(f), 13 § I(A)(5)(g), As set forth in the Amended Complaint, Connecticut's closure orders have caused Chief of Staff to suffer a physical loss because it lost the use of its insured property for its intended purpose. Amend. Compl. 43. Hiscox argues that Chief of Staff's suspension of operations did not trigger coverage because it was not caused by any physical or tangible alteration of its property. Mot. at 7-10. However, this position finds no support in the plain language of Chief of Staff's Policy and ignores well-settled law regarding the construction of insurance policies.

### A. Physical loss of property does not require alteration to the property.

The Policy's plain language supports coverage in the absence of a tangible alteration to the property itself. It is black-letter law that a contract must, where possible, be interpreted so to give reasonable meaning to each provision without rendering any portion superfluous. Chief of Staff's Policy covered both "loss of" property in addition to "damage to" property.

First, both "loss of" and "damage to" are undefined terms. Because "loss" and "damage" are separated by the disjunctive "or," they are necessarily different things. If a loss could not occur without damage, then the Policy would contain surplus language. Accordingly, "direct physical loss" must mean something other than "direct physical damage" and must encompass loss of use.

Hiscox conflates "loss" and "damage" to argue that the Policy requires a tangible, physical alteration. Putting aside that neither the word "alter" nor the word "alteration" is found anywhere in the Policy, Hiscox's interpretation of the policy would render the phrase "loss of" meaningless and therefore cannot be correct. The Court must give

meaning to both terms. *See Nautilus Grp., Inc. v. Allianz Global Risks US*, 2012 WL 760940, at * 7 (W.D. Wash. Mar. 8, 2012) (stating that "if 'physical loss' was interpreted to mean 'damage,' then one or the other would be superfluous"); *Manpower, Inc. v. Ins. Co. of the State of Penn.*, 2009 WL 3738099, at *5 (E.D. Wis. Nov. 3, 2009) (same); *see also Studio 417*, 2020 WL 4692385, at *5 (W.D.Mo. Aug. 12, 2020) (same).

It is simply untrue, as Hiscox contends, that settled law requires "loss of" and "damage to" to mean the same thing or require physical alteration of the property in question. To the contrary, "[t]he majority of cases appear to support [the] position that physical damage to the property is not necessary, at least where the building in question has been rendered unusable by physical forces." *TRAVCO Ins Co.*, 715 F. Supp. 2d at 708. Courts in various jurisdictions have held that even absent a physical alteration, a physical loss may occur when the property is uninhabitable or unusable for its intended purpose. *See Studio 417*, 2020 WL 4692385, at *6 (denying motion to dismiss where physical loss tethered to COVID-19 and closure orders); Decl. Exh. D *Mehl v. The Travelers Home & Marine Ins. Co.*, Case No. 16-CV-1325-CDP (E.D. Mo. May 2, 2018), ECF No. 25 (denying insurer's motion for summary judgment due to evidence that plaintiff considered the property uninhabitable); *Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 236 (3d Cir. 2002) (affirming denial of coverage but recognizing that "[w]hen the presence of large quantities of asbestos in the air of a building is such as to make the structure uninhabitable and unusable, then there has been a distinct [physical] loss to its owner"); *Three Palms Pointe, Inc. v. State Farm Fire & Cas. Co.*, 250 F. Supp. 2d 1357, 1364 (M.D. Fla. 2003) ("under Florida law 'direct physical loss' includes more than losses that harm the structure of the covered property.")

(citing *Azalea, Ltd. v. Am. States Ins. Co.*, 656 So. 2d 600 (Fla. Dist. Ct. App. 1995)); *Prudential Prop. & Cas. Ins. Co. v. Lilliard-Roberts*, 2002 WL 31495830, at * 9 (D. Or. June 18, 2002) (citing case law for the proposition that "the inability to inhabit a building [is] a 'direct, physical loss' covered by insurance"); *Murray v. State Farm Fire & Cas. Co.*, 509 S.E.2d 1, 17 (W.Va. 1998) ("Direct physical loss also may exist in the absence of structural damage to the insured property."); *General Mills, Inc. v. Gold Medal Ins. Co.*, 622 N.W.2d 147, 152 (Minn. Ct. App. 2001) ("[D]irect physical loss can exist without actual destruction of property or structural damage to property; it is sufficient to show that insured property is injured in some way."); *Sentinel Mgmt. Co. v. New Hampshire Ins. Co.*, 563 N.W.2d 296, 300 (Minn. Ct. App. 1997) (same).

For example, in *Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*, an ammonia leak rendered a juice plant inoperable but did not cause a physical alteration to the plant. The court found that the insured had suffered "direct physical loss or damage," and expressly held that property can sustain physical loss or damage without experiencing structural alteration." 2014 WL 6675934, at *5 (D.N.J. Nov. 24, 2014); *see also Farmers Ins. Co. of Or. v. Trutantich*, 858 P.2d 1332 (Or. App. 1993) (physical loss due to odor).

Moreover, to read a requirement of physical alteration or actual damage into the phrase "loss of" would violate grammatical principles. *See R.T. Vanderbilt Co., Inc. v. Hartford Accident & Indem. Co.*, 171 Conn. App. 61, 279, 156 A.3d 539, 657 (2017), *aff'd*, 333 Conn. 343, 216 A.3d 629 (2019). Specifically, an insured cannot suffer alteration or damage "of" their property, only "to" their property. Thus, neither actual damage nor physical alteration are required to sustain a "loss of" an insured's property.

### B. Hiscox's authorities are not to the contrary.

Hiscox argues that the existing case law required Chief of Staff to have experienced a physical manifestation of the alleged loss in the form of a tangible change to the insured property. Hiscox cites *England v. Amica Mut. Ins. Co.*, No. 16-1951, 2017 WL 3996394, at *6 (D. Conn. Sept. 11, 2017), for the proposition that direct physical loss of property unambiguously requires physical manifestation of change to the detriment of the insured, but Hiscox misrepresents the *England* case. There, the plaintiff alleged that she suffered a physical loss due solely to the fact that a chemical reaction occurred, not that the chemical reaction affected her use of the property. There, the court held that a "chemical reaction itself, absent physical manifestation in the Property marking a change to an unsatisfactory state" is not a loss under her policy. *Id.* at *8. Here, in contrast, Connecticut's closure orders are not merely a background occurrence, those orders have detrimentally altered Chief of Staff's ability to access and use its insured property.

Hiscox also quotes *Couch on Insurance* for the proposition that "physical loss or damage" generally excludes losses that are intangible, or do not involve a physical alteration of the property. Mot. at 8. But Hiscox fails to quote the very next paragraphs of the treatise explaining that there are cases to the contrary:

> The opposite result has been reached, allowing coverage based on physical damage despite the lack of physical alteration of the property, on the theory that the uninhabitability of the property was due to the fact that gasoline vapors from adjacent property had infiltrated and saturated the insured building, and the theory that the threatened physical damage to the insured building from a covered peril essentially triggers the insured's obligation to mitigate the impending loss by undertaking some hardship and expense to safeguard the insured premises.
>
> These cases present difficult analytical challenges to courts seeking a result that comports with the parties' agreement. Why should a property insurer be responsible when gasoline fumes permeate the premises but not when there is asbestos in the building? One good argument for this seeming discrepancy is that

-10-

the asbestos was presumably put there deliberately, as part of the normal building and construction process, and, as such, is considerably less fortuitous than fumes from gasoline that has strayed onto the insured premises from property owned and controlled by another. The fortuity concept is, of course, a foundational concept in insurance law, and the fortuitous leaking of gasoline is much closer to the classic "random risk" that insurers are in the business of assessing than is the concealed but intentional presence of asbestos.

10A Couch on Insurance, § 148.46 (3d ed. 2020) (footnotes omitted).

The other cases cited by Hiscox either wrongly interpreted policy language or are distinguishable from the facts here. In *Roundabout Theater Co. v. Continental Casualty*, the court denied coverage when a theater was shut down as a result of a construction accident in a nearby building that closed the street in spite of the policy's coverage of physical loss of or damage to property. 301 A.D. 1 (N.Y. App. Div. 1st Dept. 2002). However, that court incorrectly interpreted "loss" and "damage" to have the same meaning, 302 A.D.2d at 7, contrary to settled New York law that words in a disjunctive clause are to be considered separately, *e.g.*, *Cresvale Intern. Inc. v. Reuters Am., Inc.*, 257 A.D.2d 502, 505 (N.Y. App. Div. 1st Dept. 1999), and that policies should not be interpreted to make words meaningless, *Burlington Ins. Co. v. NYC Transit Auth.*, 79 N.E.3d 477, 482 (N.Y. 2017). Because *Newman Myers Kreines Gross Harris P.C. v. Great N. Ins. Co.*, 177 F. Supp. 3d 323, 330 (S.D.N.Y. 2014) relies upon *Roundabout Theater*, it suffers from the same flawed reasoning and is inconsistent with settled New York law.[2]

Hiscox also argues that the Policy's definition of "period of restoration" supports the requirement of a physical or tangible alteration of property. Mot. at 9. Again, not so.

---

[2] For the same reasons, because they treated "loss" and "damage" the same., both *Gavrilides Mgmt. Co. v. Michigan Ins. Co.*, No. 20-258-CB-C30, Ingham Co., Mich, (July 1, 2020) and *Rose's 1, LLC v. Erie Ins. Exch.*, No. 2020-CA-002424B (Aug. 6, 2020), Def. Decl. Exhs. F, H, are also incorrectly decided.

-11-

Hiscox continues its misdirection by failing to quote the full relevant language, and a complete reading of that section supports coverage. Once a loss has occurred, Plaintiffs' insurance pays for losses during the "suspension of 'operations' during the 'period of restoration.'" Decl. Exh A at 11 § I(A)(5)(f)(1)(a). Both "suspension," *id.* at 12 § I(A)(5)(f)(3), and "period of restoration," *id.* at 36 § I(H)(9), are defined terms that describe the nature and scope of the insured's losses, not the existence of a loss. Neither term requires a physical alteration to have meaning within the policy. It is true that the "period of restoration" can provide a measure of time that ends when property is "repaired, rebuilt, or replaced." *Id.* at 36 § I(H)(9)(2)(a). But the "period of restoration" can also end "when business is resumed at a new permanent location." *Id.* § I(H)(9)(2)(b). Thus, coverage here would not write "period of restoration" out of the policy, as Hiscox claims. Rather, "period of coverage" was drafted with an understanding that the covered loss could include "loss of property" including the inability to use the insured location.

      **C.**     **Alternatively, "physical loss of or damage to property" is ambiguous.**

For the reasons set forth above, Chief of Staff has suffered "direct physical loss of" its property when its business was curtailed as a result of the stay-at-home orders. The more persuasive authority supports this result. However, if the Court is undecided as to whether Plaintiffs suffered a "direct physical loss," Plaintiffs loss should have coverage because the phrase "direct physical loss or damage" is ambiguous. *See Conn. Ins. Guar. Ass'n v. Fontaine*, 900 A.2d 18, 23 (Conn. 2006) (holding when the words of an insurance contract are susceptible of two equally reasonable interpretations, that which will sustain the claim and cover the loss must prevail).

The fact that there are conflicting authorities as to the interpretation of whether physical change is necessary for a "physical loss" demonstrates that the term is ambiguous. *See, e.g., Amerada Hess Corp. v. Zurich Ins. Co.*, 29 F. App'x 800, 805 (3d Cir. 2002); *Stroehmann v. Mutual Life Ins. Of N.Y.*, 300 U.S. 435, 439 (1937) ("Examination of the words relied upon to show an exception to the incontestability clause of the policy discloses ample cause for doubt concerning their meaning. The arguments of counsel have emphasized the uncertainty. The District Court and the Circuit Court of Appeals reached different conclusions, and elsewhere there is diversity of opinion."); *Alliance Life Ins. Co. v. Ulysses Volunteer Fireman's Relief Ass'n.*, 529 P.2d 171, 180 (Kan. 1974).

Moreover, other courts have looked to the definitions in third-party liability provisions in assessing ambiguity. *See Mehl*, ECF No. 25 Decl. Ex. D at 2. Here, Chief of Staff's liability coverage expressly defines "property damage" to include both "[p]hysical injury to tangible property, including all resulting loss of use of that property" ***and*** "[l]oss of use of tangible property that is not physically injured." Decl. Ex A at 51 § II(F)(17). For the Policy's terms to have consistent meaning, "physical loss of or damage to property" must include situations where property is rendered functionally unusable, even if there is no alteration to that property. In light of this definition, Hiscox's argument that the undefined term "physical loss of or damage to" requires a tangible physical manifestation of damage or physical alteration demonstrates an ambiguity because the terms are susceptible to two equally reasonable interpretations.

## II.   Chief of Staff has properly alleged Civil Authority coverage.

Civil Authority coverage applies when (1) other property is damaged, (2) an action of civil authority prohibits access to the described premises and surrounding area, (3) the described premises is within one mile of the damaged other property, and (4) the action of civil authority is

in response to the cause of loss that caused damage. Decl. Exh. A at 13-14 § I(A)(5)(g). For the same reasons Chief of Staff has suffered "physical loss of or damage to" its property as a result of the Connecticut's closure orders such that the loss is covered under the regular business interruption coverage, other property within one mile of the insured property was likewise damaged by the orders.

Defendants argue at length that Chief of Staff has failed to allege an order physically prohibiting "all access to the described premises." But the Policy does not include any language to suggest that an order prohibiting access must prohibit "all" or "any" access. In addition, Chief of Staff alleges that the closure orders fully prohibited access to Plaintiff's property, prohibited access to all nonessential businesses and not-for-profit enterprises, and required a 100% reduction in workforces. Amend. Compl. ¶¶ 32, 47. At the motion-to-dismiss stage, these allegations plausibly allege that access was prohibited to such a degree as to trigger the civil authority coverage. *See Studio 417*, 2020 WL 4692385, at *7 (denying motion to dismiss claim for civil authority coverage from COVID-19 related closure orders).

### IV. The Policy's virus exclusion does not apply to losses caused by Connecticut's closure orders.

Hiscox's final argument is that Chief of Staff's Policy excludes the loss caused by the closure orders because it contains an exclusion for losses caused by any "virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." Mot. at 13. Under Connecticut law, unless the court concludes with a "high degree of certainty" that the policy language clearly and unambiguously excludes the claim, the language should be construed in favor of the insured. *Liberty Mut. Ins. Co. v. Lone Star Indus., Inc.*, 967 A.2d 1, 22 (Conn. 2009). That standard is not satisfied here.

The virus exclusion contained in Plaintiff's Policy is intended to apply *only* in the event of contamination by bacteria or virus at the insured property. *See* Decl. Exh. E (ISO Circular LI-CF-2006-175). The Circular specifically notes that the virus exclusion was envisioned as a gap filler for instances where pollution exclusions were not being applied to contamination from viral or bacterial sources. *Id.* at 5. The examples listed specifically describe the spread of disease by the presence of disease-causing agents on interior building surfaces or the surfaces of personal property. *Id.*

As Hiscox recognizes in its brief, there is no allegation that there was a virus infestation in Plaintiff's property. *See* Mot. at 4-5. As Plaintiff alleges, the cause of its loss was the Connecticut closure order, not an infestation of the coronavirus, COVID-19. The exclusion was never intended to apply to Chief of Staff's situation, and to apply it here would do violence to the parties' intentions.

For the same reason, both Hiscox's reference to anti-concurrent causation language and citations to related case law are unavailing. ISO Circular LI-CF-2006-175 makes plain that Hiscox adopted the "virus exclusion" to avoid liability only when a disease-causing microorganism contaminates the insured property. This meaning must also apply when read in context with the "broad causal language." The exclusion does not apply merely because a virus is somewhere in the chain of events that lead to Chief of Staff's loss. Even if the exclusion applies to indirect losses, the only losses excluded are those flowing either directly or indirectly from contamination *of Chief of Staff's property*. Because Chief of Staff has not alleged a contamination of its property, the exclusion cannot bar coverage for its business income losses.

**CONCLUSION**

For the aforementioned reasons, Hiscox's motion to dismiss should be denied.

Dated: September 4, 2020

SEEGER WEISS LLP
Attorneys for Plaintiff

By: /s/ Stephen A. Weiss
    STEPHEN A. WEISS

Christopher A. Seeger
Stephen A. Weiss
SEEGER WEISS
77 Water Street, 8th Floor
New York, New York 10005
Telephone: 212/584-0700

James E. Cecchi
CARELLA, BYRNE, CECCHI
OLSTEIN, BRODY & AGNELLO
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

Samuel H. Rudman
ROBBINS GELLER RUDMAN
& DOWD LLP
58 South Service Road, Suite 200
Melville, NY 11747
(631) 367-7100

Paul J. Geller
Stuart A. Davidson
ROBBINS GELLER RUDMAN
& DOWD LLP
120 East Palmetto Park Road, Suite 500
Boca Raton, Florida 33432
(561) 750-3000

*Attorneys for Plaintiff*

# **CERTIFICATE OF SERVICE**

I hereby certify that on September 4, 2020, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system which will send a notice of filing to:

*Attorneys for Defendant:*

Peter J. Valeta (3128282)
Wendy N. Enerson (6272377)
COZEN O'CONNOR
123 North Wacker Drive, Suite 1800
Chicago, Illinois 60606
Phone: (312) 474-7981
Phone: (312) 382-3162
Email: pvaleta@cozen.com
wenerson@cozen.com

Judy Y. Barrasso, La. Bar No. 02814 (PHV)
Celeste Coco-Ewing, La. Bar No. 25002 (PHV)
Chloé M. Chetta, La. Bar No. 37070 (PHV)
BARRASSO USDIN KUPPERMAN
FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2350
New Orleans, LA 70112
Main: 504-589-9700
Email: jbarrasso@barrassousdin.com
ccoco-ewing@barrassousdin.com
cchetta@barrassousdin.com

/s/ Stephen A. Weiss
Stephen A. Weiss