UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHIEF OF STAFF LLC, Individually and on Behalf of All Others Similarly Situated, | * Civil Action No. 1:20-cv-03169 * * |
| Plaintiff, | * JUDGE FEINERMAN * |
| vs. | * * |
| HISCOX INSURANCE COMPANY INC., | * MAGISTRATE JUDGE VALDEZ * * |
| Defendant | * **ORAL ARGUMENT REQUESTED** * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANT HISCOX INSURANCE COMPANY INC.'S
REPLY MEMORANDUM IN FURTHER SUPPORT OF
<u>RULE 12(b)(6) MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT</u>**

In step with the many courts recently dismissing various plaintiffs' coronavirus business interruption claims because they are not covered under business property policies, Hiscox is entitled to dismissal here. As in those cases, COS's Business Personal Property policy insures against direct physical harms to property, not mere financial losses like COS's coronavirus-related losses alleged here. COS's arguments in opposition cannot overcome this fundamental flaw.

*First*, trying to show "direct physical loss of or damage to Covered Property," COS argues only that it has suffered intangible and imperceptible economic harm attendant to an alleged inability to use unspecified property. Because mere loss of use does not satisfy the Policy's requirements of "direct" and "physical" loss of or damage to Covered Property as a matter of law, COS has failed to state a claim for Business Income or Extra Expense coverage.

*Second*, because COS has not alleged "damage" to nearby property, COS has also failed to state a claim for Civil Authority coverage. COS further neglects to plead or argue several other necessary elements, arguing, without any supporting authority, that total prohibition of access to

1

its premises is not required and that it "plausibly alleges [all] access was prohibited" anyway, even though Connecticut's stay-at-home orders say otherwise.

*Third*, COS has not alleged or argued any basis to overcome the Policy's exclusion for "losses caused directly or indirectly by any . . . virus." Because the coronavirus undisputedly triggered each of Connecticut's stay-at-home orders, the Policy's virus exclusion applies. COS's extrinsic evidence, namely the 2006 ISO Circular, is inadmissible and cannot be considered in interpreting this clear and unambiguous virus exclusion. Even if the Court considered it, the Circular does not support any argument that the virus exclusion applies only to "contamination," when that supposed caveat is nowhere in the Policy's plain language.

Because COS has not stated—and cannot—state a claim for coverage under its Policy, this action should be dismissed.

**A.     COS's financial loss due to an alleged "loss of use" does not satisfy the Policy's requirement of "direct *physical* loss of or damage to" property.**

COS bears the burden of proving its claim for business income and extra expense losses falls within the terms of its Policy, which requires, first and foremost, proof of "direct physical loss of or damage to Covered Property." *See* Memo. Decl. Exh. A at 7 § I(A). COS does not dispute—but fails entirely to discuss—the fact that its "Covered Property" is only "Business Personal Property" like computers and office furniture, not its general office space. *Id.* at 7 § I(A)(1)(b). COS also does not dispute—but again, fails entirely to discuss—that nothing *physically* happened to its covered property: its Business Personal Property is not lost and exists in the same physical condition now as it did before Connecticut's first stay-at-home order. Thus, it is uncontested that the insured property has not suffered any direct physical loss or damage.

Contrary to both recent and well-established law, COS argues that the disjunctive "or" and the term "of" in the operative Policy language, "direct physical loss of or damage to Covered

Property," mean the Policy covers loss of use. But "direct physical loss of property" and "loss of *use of* property" are not the same. In *10E, LLC v. Travelers Indemnity. Co.*, the court considered and rejected this exact argument, explaining: "losses from inability to use property do not amount to 'direct physical loss of or damage to property' within the ordinary and popular meaning of that phrase." No. 2:20-cv-04418-SVW-AS, 2020 WL 5359653, at *4 (C.D. Cal. Sept. 2, 2020).[1] Indeed, as COS points out, the Policy expressly covers "loss of use"—by using that precise phrase—only in the definition of "property damage" for third-party liability coverage, not in the property coverage section. As COS itself argues, differences in words should convey differences in meaning; where the Policy intends to cover "loss of use," it expressly says so. *See* Memo. Decl. Exh. A at 51 § II(F)(17)(a). That the Policy language for liability coverage (subject to its own terms, conditions, definitions, etc.) includes "loss of use" further underscores that "loss of use" is insufficient to trigger *property* coverage for "direct physical loss of . . . Covered Property." Moreover, when read as a whole, the Policy's property coverage section makes clear that "loss of use" is not covered by expressly excluding "loss or damage caused by or resulting from . . . . loss of use or loss of market." *See* Memo. Decl. Exh. A at 23 § I(B)(2)(b); *see also Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, __ F. Supp. 3d __, 2020 WL 5525171, at *6 (N.D. Cal. Sept. 14, 2020) ("The separate [exclusion] for loss of use suggests that the 'direct physical loss of . . . property' clause was not intended to encompass a loss where the property was rendered unusable without an intervening physical force.").

Further, COS's "loss of use" argument ignores that the words "direct" and "physical" modify both "loss of" and "damage to" the covered property. COS suggests that Hiscox is

---

[1] *10E, LLC* and the other recently decided cases involving coronavirus-related business interruption losses, discussed throughout this and Hiscox's original supporting memorandum were resolved on pleading-stage motions to dismiss.

manufacturing arguments about tangible or physical alternations of property on a blank slate, as if numerous courts, including Connecticut courts like *England v. Amica Mutual Insurance Co.*, have not already addressed this issue and rejected the same argument COS makes here.[2] While COS tries to distinguish *England*, COS cannot refute its clear holding, interpreting "direct physical loss" to mean "physical, tangible alteration to any property," plain and simple:

> [T]he terms "direct physical loss" and "loss," as used in the Policies, unambiguously require some change to the detriment of the insured, and a chemical reaction—without any physical manifestations—does not fit that bill.
>
> . . . .
>
> [T]he term "loss" must be accorded a meaning that is limited to observable, tangible effects . . . . [T]he term "loss" includes perceptible harms that manifest as a consequence of triggering events—but does not include the triggering events themselves. That the Policies . . . provide[] coverage only for "direct physical losses" further underscores that a covered loss . . . must be in the form of a perceptible harm for a policyholder to claim coverage.
>
> . . . .
>
> As noted above, the only "direct physical loss" identified in the complaint—that is, the only "physical, tangible alteration to any property"—is the cracking and deterioration of the basement walls . . . .

No. 3:16-cv-1951, 2017 WL 3996394, at *6–8 (D. Conn. 2017) (citations omitted).

---

[2] COS's cited authorities do not undermine the Policy's requirement for *physical* loss or damage. *See, e.g.*, *Nautilus Grp., LLC v. Allianz Global Risks US*, No. C11-5281BHS, 2012 WL 760940, at *6 (W.D. Wash. Mar. 8, 2012) ("The instant case is factually distinguishable because Nautilus alleges that the covered property was *physically* lost [because former employee refused to return it.]" (emphasis added)); *Manpower, Inc. v. Ins. Co. of Penn.*, No. 08C0085, 2009 WL 3738099, at *2 (E.D. Wis. Nov. 3, 2009) (finding coverage under policy insuring against "risk[s] of direct physical loss of or damage to property" for a *physical* collapse of part of an office building); *TRAVCO Ins. Co. v. Ward*, 715 F. Supp. 2d 699, 708 (E.D. Va. 2010) (explaining in dicta before excluding coverage that "physical damage to the property is not necessary" if the covered property is "rendered unusable by *physical* forces" such as drywall physically emitting dangerous gases (emphasis added)); *Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 236 (3d Cir. 2002) (finding the *physical* presence of "large quantities of [free, respirable] asbestos in the air of a building" constituted a covered loss under the applicable policy); *Three Palms Pointe, Inc. v. State Farm Fire & Cas. Co.*, 250 F. Supp. 2d 1357, 1363 (M.D. Fla. Mar. 10, 2003) (noting that the parties did not dispute that a property's *physical* collapse was covered as an "accidental direct physical loss")). COS does not allege that physical force or physical pressure rendered its Business Personal Property unusual; thus, its cited cases are all inapposite.

Courts across the country, both in the context of coronavirus cases and others, agree that, where "direct" and "physical" modify "loss" in policy language, coverage is available only if there is proof of material or tangible alteration of the property. For example, the Eleventh Circuit recently affirmed a district court's decision dismissing a restaurant's business interruption claim for cleaning and remediating dust and debris from nearby construction. *Mama Jo's, Inc. v. Sparta Ins. Co.*, __ F. App'x __, 2020 WL 4782369 (11th Cir. 2020). As the court explained, "'[d]irect' and 'physical' modify loss and impose the requirement that the damage be actual. . . . [A]n item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical.'" *Id.* at *8 (collecting cases).

In the coronavirus context, the Central District of California in *10E LLC* interpreted policy language identical to COS's here, holding that the "physical loss or damage occurs only when property undergoes a 'distinct, demonstrable, physical alteration,'" and that "an insured cannot recover by attempting to artfully plead temporary impairment to economically valuable use of property as physical loss or damage." 2020 WL 5359653, at *4–5; *see also Pappy's Barber Shops, Inc. v. Farmers Grp.*, No. 20-CV-907-CAB-BLM, 2020 WL 5500221, at *4 (same). In *Gavrilides Management Co. v. Michigan Insurance Co.*, the court explained, "direct physical loss of or damage to property" is merely "a short-cut way of saying 'direct physical loss of property or direct physical damage to property.' . . . [T]he plaintiff just can't avoid the requirement that there has to be something that physically alters the integrity of the property." Memo. Decl. Exh. F at 18–20. Rejecting the exact argument COS makes here as "just simply nonsense," the *Gavrilides* court held that a loss of use of restaurant tables and chairs for dine-in services "comes nowhere close to meeting the requirement that there [] . . . has to be some physical alteration to or physical damage or tangible damage to the integrity of the [Covered Property]." Memo. Decl. Exh. F at 20. In

5

*Malaube, LLC v. Greenwich Ins. Co.*, the court also explained: "'Direct physical' modifies both 'loss' and 'damage.' That means that 'any interruption in business must be caused by some *physical problem* with the covered property.'" No. 20-22615, 2020 WL 5051581, at *7 (S.D. Fla. Aug. 26, 2020) (alterations and citations omitted). Importantly, none of these cases—or even the cases COS cites—find this language to be ambiguous, as COS now tries to argue. And in each of these cases, the courts dismissed the plaintiffs' coronavirus business interruption claims on the insurers motions to dismiss.

Just as *10E LLC*, *Pappy's Barber Shops*, *Gavrilides*, and *Malaube*, the Policy here requires "direct" and "physical" "loss of or damage to property." COS's alleged inability to use physically unaltered or undamaged property simply is not sufficient. COS cannot prove a material, tangible, or physical loss because nothing "direct" or "physical" happened to COS's Business Personal Property. For example, it has not been stolen, misplaced, burned down, or swept away in a flood. Connecticut's stay-at-home orders did not *physically* move or alter COS's property. COS's furniture and computers are safe and intact: they're not lost or missing, nothing is physically wrong with them, and they are still capable of use.[3] Because COS still physically possesses or controls its property—and in the same form as it did before any stay-at-home order—COS's insured property has not suffered any "direct physical loss."[4] *See 10E, LLC*, 2020 WL 5359653, at *5

---

[3] For similar reasons, COS's argument about the Policy's "period of restoration" is misplaced. The Policy measures the end of the coverage period "on the earlier of: (a) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or (b) The date when business is resumed at a *new permanent location*." Memo. Decl. Exh. A at 36 § I(H)(9)(a)(2) (emphasis added). COS concedes that subparagraph (a) means nothing without a *physical* manifestation of loss or damage, which COS undisputedly cannot show here. Yet COS argues that its period of restoration could also end according to subparagraph (b), "when business is resumed at a new permanent location." But this is unworkable when applied to COS's coronavirus claims: COS has not alleged that it intends to resume its business at a "new permanent location" because nothing is wrong with, and it intends to (and has continued to) use, its existing location.

[4] COS cites a single case, *Studio 417 Inc. v. The Cincinnati Insurance Co.*, where a court denied a motion to dismiss coronavirus-related business interruption claims. No. 20-cv-03127, 2020 WL 4692385

6

("Even if the Policy covers 'permanent dispossession in addition to physical alteration, that does not benefit Plaintiff here [because Plaintiff] does not allege that it was permanently dispossessed of any insured property."). COS's alleged financial losses attendant to an inability to use physically unchanged property does not constitute a "direct physical loss of or damage to Covered Property" within the meaning of the Policy.

**B.     COS fails to allege facts supporting each element of Civil Authority coverage and neglects to address the plain language of Connecticut's stay-at-home orders, which allowed businesses access to their office spaces.**

COS also fails to state a claim for Civil Authority coverage under the Policy's plain terms. As shown in Hiscox's original supporting memorandum, Civil Authority coverage requires at least four specific elements: (1) a "Covered Cause of Loss" caused (2) "damage to property other than property at the described premises," (3) which creates a "dangerous physical condition" or warrants authorities' "unimpeded access" (4) leading authorities to "prohibit[] access . . . to the area immediately surrounding the damaged property." Memo. Decl. Exh. A at 13–14 § I(A)(5)(i).

Instead of addressing these elements head on, COS tries to reconfigure the coverage provision into its own four-part test, neglecting to include the clear requirement that damage to other property creates a "dangerous physical condition" or warrants authorities' "unimpeded access" (the third element above), COS fails, both in its complaint and opposition brief, to assert

---

(W.D. Mo. Aug. 12, 2020). This case is inapposite for several reasons. There, unlike here, the plaintiffs specifically alleged that the coronavirus had contaminated the insured properties. Further, the court, applying New Jersey law, noted that New Jersey courts had not yet interpreted the phrase "direct physical loss;" here, Connecticut courts, like *England*, have held the same phrase requires a "physical manifestation" or "physical alteration" of loss. Finally, the court analyzed the applicable stay-at-home orders, which specifically required the types of businesses at issue (a hair salon, for example) to close. Connecticut's orders, on the other hand, do not require staffing agencies like COS to close. *See generally Pappy's Barber Shops,* 2020 WL 5500221 at *4 n.2 (distinguishing *Studio 417* because the district court based its denial on the fact that the insured specifically alleged that the coronavirus "attached to" the plaintiffs' properties and "infected the insured properties with the virus").

7

facts supporting this element. For that reason alone, COS fails to state a claim for Civil Authority coverage as a matter of law. *See* Opp. at 13–14.

COS fails to satisfy the remaining elements of Civil Authority coverage too. Critically, the relevant government order must arise because of "*damage* to property other than property at the described premises." Memo. Decl. Exh. A at 13 § I(A)(5)(i) (emphasis added). COS circularly argues that "[f]or the same reasons [it] has suffered 'physical loss of or damage to' its property as a result of the Connecticut's [sic] closure orders . . . other property within one mile of the insured property was likewise damaged by the orders," without identifying a single property. Opp. at 14. This argument contradicts COS's other arguments that "loss" and "damage" are different. While COS argues that mere "loss of use" should satisfy the meaning of "direct physical loss" for its Business Income and Extra Expense coverage, *nowhere* does COS argue that "loss of use" should satisfy the meaning of "damage to" property. *See generally* Opp. at 7–8. For Civil Authority coverage, however, the Policy unequivocally requires proof of "damage." Because COS neither alleges nor argues any "damage to" nearby property, COS has failed to state a claim for Civil Authority coverage as a matter of law.

COS also fails to show that any civil authority order "prohibit[ed] access . . . to the area immediately surrounding the damaged property." *See* Memo. Decl. Exh. A at 13 § I(A)(5)(i). Instead, COS argues, without citing a single supporting authority, that "prohibit access" means something other than to, in fact, prohibit access through total closure. As the cases Hiscox cited confirm, "prohibit[] access" means what it says—prohibit all access. *See* Memo. at 6, 11. That the Policy does not include the word "all" or "any" before "access" is not dispositive. Common sense compels finding—as courts across the country have done—that "prohibit access" means physical access to the premises is impossible (or illegal). COS's cited authority is not to the

8

contrary. In *Studio 417 v. Cincinnati Insurance Co.*, the civil authority orders specifically closed the types of businesses the insureds in that case operated. Here, however, although Connecticut's stay-at-home orders may have limited typical in-person business operations, they did not *close* COS's business or prohibit it from operating, let alone bar access to COS's premises. *Compare Pappy's Barber Shops*, 2020 WL 5500221, at *6 (distinguishing hair salon plaintiffs' "place of business (i.e., the physical premises where they operate their business[es]), and the business itself" noting that "[t]he government orders alleged in the complaint prohibit the operation of Plaintiff[s'] business[es]; they do not prohibit access to Plaintiffs' place[s] of business").

COS's alternative argument that it should survive dismissal merely because it "alleges that the closure orders fully prohibited access to [its] property" is insufficient for several reasons. First, this is a conclusory allegation entitled to zero weight in resolving a motion to dismiss. *See Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002) (holding courts are "not obliged to accept as true legal conclusions or unsupported conclusions of fact"); *Nance v. Rothwell*, No. 09 C 7733, 2011 WL 1770306, at *5 (N.D. Ill. May 9, 2011) (Feinerman, J.) ("[U]nsupported conclusions of fact and conclusions of law will not defeat an otherwise meritorious motion to dismiss."). Second, this conclusory allegation does not even encompass the ultimate fact COS must show—that civil authorities prohibited access to "the area *immediately surrounding the damaged property*," beyond prohibiting access to COS's described premises. *See* Memo. Decl. Exh. A at 13 § I(A)(5)(i) (emphasis added). COS's complaint says nothing about the properties surrounding its described premises or the types of business done there. And according to COS's own allegations, some businesses continued their work while others were shut down, so access to these properties would not be prohibited, even by COS's standard. What's fatal, COS's conclusory allegation that the

9

orders "fully prohibited access" is refuted by the very Connecticut stay-at-home orders incorporated into its complaint, which clearly allow non-essential businesses "on site" access:[5]

> 1) non-essential retailers [may] be staffed on site, provided that they may only offer remote ordering (e.g. phone, internet, mail, dropbox) and delivery or curb-side pick-up, and 2) non-essential businesses and nonprofits [may] allow staff or third parties on site to the minimum extent necessary to provide security, maintenance, and receipt of mail and packages, or other services deemed essential in implementing guidance issued by the Department of Economic and Community Development.

Memo. Exh. E. COS does not—and cannot—dispute the language of this stay-at-home order, which COS fundamentally relies on to bring its claims in the first place. Nor does COS dispute that, as a non-essential business, its staff or even third parties had access to its premises. *See* Opp. at 14. Because COS has failed to allege sufficient facts supporting each element of its Policy's Civil Authority coverage, its claims should be dismissed.

**C.    COS's arguments against the virus exclusion are unsupported and contradict the Policy's plain language excluding all losses "caused directly or indirectly by any . . . virus."**

Finally, COS cannot escape the dispositive applicability of the Policy's virus exclusion. To start, COS's argument that the exclusion applies only "in the event of contamination" depends on a 2006 ISO Circular as parol evidence, which this Court cannot consider in interpreting unambiguous policy language.[6] *See Schilberg Integrated Metals Corp. v. Cont'l Cas. Co.*, 819

---

[5] *See Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) ("Documents . . . are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim."). The Court can also judicially notice Connecticut's stay-at-home orders in resolving this motion. Consistent with the Federal Rules of Evidence, the stay-at-home orders, taken directly from the Connecticut governor's website, "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see also Olson v. Champaign Cnty., Ill.*, 784 F.3d 1093, 1097 n.1 (7th Cir. 2015) ("As a general rule, we may take judicial notice of public records not attached to the complaint in ruling on a motion to dismiss under Rule 12(b)(6).").

[6] This Court also cannot consider extraneous evidence nowhere referenced in the complaint, as a matter of federal procedure in resolving a Rule 12(b)(6) motion to dismiss. *See Alioto v. Marshall Field's & Co.*, 77 F.3d 934, 936 (7th Cir. 1996) ("[W]hen [analyzing] a complaint . . . under Rule 12(b)(6), the district court may not look to materials beyond the pleading itself."); *Unchageri v. YuppTV USA, Inc.*, No.

A.2d 773, 795 (Conn. 2003) ("[T]he parol evidence rule bars [introducing] any extrinsic evidence to vary or contradict the plain meaning of the language contained in the exclusions." (quoting *Heyman Assocs. No. 1 v. Ins. Co. of Penn.*, 653 A.2d 122, 135 (Conn. 1995)). Importantly, COS does not even argue that the Policy's virus exclusion is ambiguous—because it is not. *See Turek Enters., Inc. v. State Farm Mut. Auto. Ins. Co.*, No. 20-11655, 2020 WL 5258484, at *9 (E.D. Mich. Sept. 3, 2020) (refusing to consider the same ISO Circular because "the plain, unambiguous meaning of the Virus Exclusion negates coverage"). And, COS has not and cannot dispute that the plain language of the virus exclusion as it appears in COS's Policy does not remotely suggest that its reach is limited to contamination. Indeed, the term "contamination" appears nowhere in the exclusion. Further, even if the Court considered it, the ISO Circular itself does not support COS's effort to limit the exclusion to contamination. The ISO Circular conspicuously declares, "[t]his filing introduces [the virus exclusion] which states there is no coverage for loss or damage caused by or resulting from any virus . . . that induces or is capable of inducing physical distress, illness or disease." Opp. Exh. E at 2. Again, "contamination" is nowhere to be found.

Other courts addressing the same or similar virus exclusions agree. For example, in *Turek Enterprises*, the Eastern District of Michigan rejected the same argument COS makes here, ruling that the 2006 ISO Circular's "exact meaning is immaterial" because the virus exclusion unambiguously negates coverage:

> The parties dispute the meaning of the ISO circular, but its exact meaning is immaterial. By its terms, the Policy does not limit the Virus Exclusion to contamination, and Plaintiff has failed to show that the Virus Exclusion is ambiguous. . . . [T]he plain, unambiguous meaning of the Virus Exclusion today negates coverage.

---

17 C 3862, 2018 WL 1184737, at *4 (N.D. Ill. Mar. 7, 2018) (Feinerman, J.) (collecting cases "disregarding on a Rule 12(b)(6) motion exhibits falling outside the pleadings"). Accordingly, Hiscox asks the Court to strike COS's Exhibit E.

11

2020 WL 5258484, at *9. The court held that the plaintiff's losses were excluded because the policy "bars coverage for any loss that would not have occurred but for some 'virus.'" *Id.* at *8.

Ignoring the breadth of the virus exclusion and the language of Connecticut's stay-at-home orders specifically invoking the coronavirus, COS argues that Connecticut's orders, not the coronavirus, caused its loss. Courts also have rejected this argument, finding that because government orders stem from the coronavirus, the virus exclusion applies. In *Martinez v. Allied Insurance Co. of America*, the Middle District of Florida held that an identical virus exclusion unambiguously precludes coverage for coronavirus-related business interruption losses, even though the insured in that case argued the "Closure Orders" directly caused its losses. No. 2:20-cv-00401, 2020 WL 5240218, at *1–3 (M.D. Fla. Sept. 2, 2020). According to the *Martinez* court, because the policy excludes coverage for "loss or damage caused '*directly or indirectly*' by any virus," the policy excludes coverage for business losses caused by coronavirus-related stay-at-home orders. *Id.* at *2 (emphasis added). The Western District of Texas also found a similar exclusion was "unambiguous and enforceable," excluding coronavirus-related business losses. *Diesel Barbershop, LLC v. State Farm Lloyds*, No. 5:20-CV-461-DAE, 2020 WL 4724305, at *6 (W.D. Tex. Aug. 13, 2020). In *Diesel Barbershop*, the court reasoned that, because "COVID-19 is in fact the reason for the [stay-at-home] orders being issued and the underlying cause of Plaintiffs' alleged losses"—indeed "the primary root cause"—the virus exclusion "excluded coverage for the losses Plaintiff incurred in complying with the Orders." *Id.* at *6–7.

The same is true here. The orders state that they are for the "protection of public health and safety during [the] COVID-19 pandemic" and issued "as a result of the coronavirus disease 2019 (COVID-19) outbreak in the United States and confirmed spread in Connecticut." Memo. Exh. E at 1. The only reasonable conclusion, just as other courts have found, is that the Connecticut

stay-at-home orders "and, by extension, Plaintiff's business interruption losses . . . would not have occurred but for COVID-19." *See Turek Enters.*, 2020 WL 5258484, at *8; *Diesel Barbershop,* 2020 WL 4724305, at *6–7. There is no dispute that every stay-at-home order COS relies on stems from the coronavirus. *See* Opp. at 4 (explaining that Connecticut enacted stay-at-home orders "[i]n an attempt to prevent the spread of the COVID-19 pandemic"). COS's unsupported contention that the exclusion "does not apply merely because a virus is somewhere in the chain of events that lead to [a] loss" is simply wrong as a matter of law. *See* Opp. at 15. The Policy's plain language says the exact opposite: if a virus "contributes . . . in any sequence to the loss,"— literally meaning, is somewhere in the causal chain of events—the loss or damage is excluded. *See* Memo. Decl. Exh. A at 21 § I(B)(1); *see generally Iroquois on the Beach, Inc. v. Gen. Star. Indem. Co.*, 550 F.3d 585, 588 (6th Cir. 2008) (contrasting situations in which insurance policies provide coverage for "[a] cause . . . determined to have set the chain of events in motion" or not). Because the coronavirus is the underlying reason for the stay-at-home orders COS alleges caused its loss, the Policy's virus exclusion applies, and COS has no claim for coverage.

## CONCLUSION

COS fails to state a claim for relief, and this action should be dismissed. COS has failed to show the "direct physical loss of or damage to Covered Property" necessary for Business Income and Extra Expense coverage. COS also has failed to show the numerous elements of Civil Authority coverage, including the requirement that a government order prohibit all access to the described premises. Finally, COS seeks coverage for losses caused by the coronavirus under a policy that excludes coverage for all losses caused directly or indirectly by any virus. Therefore, its claims, and this entire action, should be dismissed.

Respectfully submitted,

Defendant Hiscox Insurance Company, Inc.

/s/Peter J. Valeta
Peter J. Valeta (3128282)
Wendy N. Enerson (6272377)
COZEN O'CONNOR
123 North Wacker Drive, Suite 1800
Chicago, Illinois 60606
Phone: (312) 474-7981
Phone: (312) 382-3162
Email: pvaleta@cozen.com
       wenerson@cozen.com

Judy Y. Barrasso, La. Bar No. 02814 (PHV)
Celeste Coco-Ewing, La. Bar No. 25002 (PHV)
Chloé M. Chetta, La. Bar No. 37070 (PHV)
BARRASSO USDIN KUPPERMAN
  FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2350
New Orleans, LA  70112
Main: 504-589-9700
Email: jbarrasso@barrassousdin.com
       ccoco-ewing@barrassousdin.com
       cchetta@barrassousdin.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that on September 18, 2020, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send a notice of filing to:

*Attorneys for Plaintiffs:*

| | |
|---|---|
| Frank Anthony Richter<br>Robbins Geller Rudman & Dowd<br>200 S. Wacker<br>31st Floor<br>Chicago, IL 60606<br>312-674-4674<br>Email: frichter@rgrdlaw.com | James E Barz<br>Robbins Geller Rudman & Dowd LLP<br>200 S. Wacker Drive<br>Suite 3100<br>Chicago, IL 60606<br>(312) 674-4674<br>Email: jbarz@rgrdlaw.com |
| Stephen A Weiss<br>Seeger Weiss LLP<br>77 Water Street - 8th Floor<br>New York, NY 10005<br>212-584-0700<br>Email: sweiss@seegerweiss.com | Stuart Andrew Davidson<br>Robbins Geller Rudman & Dowd Llp<br>120 E. Palmetto Park Road<br>Suite 500<br>Boca Raton, FL 33432<br>(561) 750-3000<br>Email: sdavidson@rgrdlaw.com |

      /s/ Peter J. Valeta